IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


JANEY LEE PAVEY                                                    PLAINTIFF

                    v.                      Civil No. 10-2002

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                     DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Janey Pavey, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (Commissioner)

denying her claim for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

In this judicial review, the court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.       Procedural Background:**

The plaintiff protectively filed her applications for DIB on April 10, 2006, alleging an

onset date of April 2, 2001, due to degenerative joint disease, facet arthritis, depression, and

bipolar disorder.  Tr. 113, 131-132, 134, 136-137, 154, 157, 177, 179-180, 189.  Plaintiff's

application was denied initially and on reconsideration.  Tr. 60, 65, 68.  She then requested an

administrative hearing, which was held on January 23, 2009.  Tr. 7-43.  Plaintiff was present and

represented by counsel.

At the time of the administrative hearing, plaintiff was 51 years of age and possessed the

equivalent of a high school education and certification as a Licensed Practical Nurse ("LPN").

Tr. 15.  She had past relevant work ("PRW") experience as an LPN.  Tr. 15.

On July 18, 2007, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative disk disease/degenerative joint disease of the lumbar spine, heel spur, and depression/anxiety did not meet or equal any Appendix 1 listing. Tr. 52. He found that plaintiff maintained the residual functional capacity ("RFC") to perform a range of sedentary work through December 31, 2006, her date last insured. Tr. 54. Specifically, he found she could lift 10 pounds occasionally and less than 10 pounds frequently; was capable of sitting for about six hours during an eight-hour workday; and, could stand and walk for about two hours during an eight-hour workday. He also limited her to low stress, unskilled work where the interpersonal contact was incidental to the work performed and involved only occasional decision-making and changes in the workplace. With the assistance of a vocational expert, he then determined Plaintiff could still perform work as a surveillance systems monitor, inspector, and assembler. Tr. 58.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 29, 2009. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 9, 10.

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

A.    **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

AO72A
(Rev. 8/82)

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)-(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   **Evidence Presented:**

Plaintiff testified that she became disabled April 2, 2001, due to pain in her back and leg. Tr. 17. The pain purportedly radiated from her lower back to her upper back and down her left leg.  She stated that she had undergone heat therapy, massage therapy, and cortisone injections in an attempt to alleviate her discomfort.  Plaintiff indicated that her impairment made it difficult for her to sit, walk, and/or stand comfortably for any length of time.  Tr. 24-25.  When walking for any distance, she stated that her legs felt like weights and she felt as though she was dragging them.  Tr. 25.

Plaintiff also reported suffering from depression, which had improved via the use of Elavil.  Tr. 19.  She indicated that she no longer cried daily.  The anxiety reportedly started after her husband was involved in an automobile accident.  She was now taking Xanax, which helped, but she remained unable to drive on freeways.  Plaintiff was, however, still able to drive on the "back roads."  Tr. 19.

Plaintiff testified that she took Vicodin and Tramadol for pain and that this made her sleepy.  Tr. 26.  In 2006, she also indicated that she was able to care for her personal hygiene, care for her daughter, cook simple meals, drive on the back roads, do the laundry, vacuum and sweep (some), load the dishwasher, walk her dogs, and care for her dogs.  Tr. 29-34.

AO72A
(Rev. 8/82)

The relevant medical evidence reveals as follows:  On October 16, 2000, Plaintiff was prescribed Prozac for depression, mood swings, crying spells, and tiredness.  Tr. 210.

On March 1, 2001, Plaintiff stepped off her porch and into a hole.  Tr. 356-363.  X-rays revealed a fracture of her left distal fibula.  She was prescribed Ibuprofen, Tylenol #3, rest, elevation, and crutches.  Tr. 356-363.

On April 12, 2001, Plaintiff was treated in the emergency room for chest pain.  Tr. 344-355.  One week prior, she had been involved in a motor vehicle accident.  She immediately began experiencing bilateral lower back pain worse on the left than right.  One day prior to her ER visit, she had also begun experiencing some left posterior chest soreness.  At the time of her evaluation, Plaintiff reported sharp pain in her parasternal area and the left upper part of her chest with some pain extending down her arm at times.  An examination revealed a clear chest with tenderness to palpation in the left parasternal area of the chest and upper left portion of the chest.  A mild systolic murmur was also noted.  A musculoskeletal examination revealed tenderness to palpation of the lumbar and paralumbar musculature.  An EKG revealed non-specific T wave changes in the V2 and V3 segments, but a chest x-ray was normal.  Plaintiff was diagnosed with musculoskeletal chest pain status post motor vehicle accident with lumbar strain and spasm.  She was prescribed analgesics and muscle relaxers and directed to rest for a few days.  Tr. 344-355.

On June 6, 2001, an MRI of Plaintiff's lumbar spine showed disk dehydration with mild annular bulging and facet arthropathy at the L4-5 level.   Tr. 203, 304, 322.

On June 12, 1001, a medication check revealed a normal blood pressure and a weight of 205 pounds.  Tr. 368, 390.  Records indicate Plaintiff had a back injury and was unable to work.

AO72A
(Rev. 8/82)

A recent MRI had revealed L4-5 level pathology.  She was referred to a neurosurgeon and advised to continue taking the Vioxx.  Tr. 368, 390.

On January 8, 2002, Plaintiff was treated for back pain.  Tr. 368, 389.  She reported being injured in an accident in April 2001.  An exam revealed a decreased range of motion with some spasm, but no neurological deficits.  Plaintiff was prescribed Zanaflex and Vioxx.  Tr. 368, 389.

On November 18, 2002, it appears Plaintiff underwent a pre-employment exam.  Tr. 250, 297-298.  It was determined that she could stand no longer than thirty minutes at a time, lift nothing greater than 25 pounds, and walk no more than 1-2 blocks.  An examination revealed tenderness at the L4-5 level with a full range of motion in all areas and pain on extension.  She was diagnosed with a minimal residual back injury with L4-5 level disk disease, obesity, menopause, depression, and tobacco use.  Plaintiff was noted to be able to perform all household chores.  Tr. 250, 297-298.

On March 4, 2006, an MRI of Plaintiff's lumbar spine revealed advanced facet arthritis of the L4-5 level which had allowed for four millimeters of anterolisthesis of the L4 on the L5.  Tr. 204-205, 219-220, 320-321, 395-396.  Canal and lateral recess stenosis were also noted at this level with mildly severe facet arthritis at the L3-4 level causing canal and lateral recess narrowing.  Tr. 204-205, 219-220, 320-321, 395-396.

On March 7, 2006, the Physician's Assistant noted that Plaintiff had significant osteoarthritis of the facets of her back.  Tr. 366, 387.  Plaintiff also reported that the Effexor was causing headaches.  She was diagnosed with chronic back pain and degenerative back pain.  She was prescribed Wellbutrin in lieu of Effexor and referred to an orthopedist.  Tr. 366, 387.

6

On March 31, 2006, Dr. Oluwatoyin Falodun examined Plaintiff in the Emergency Room. Tr. 324-343.  Plaintiff complained of spasms over her left femur with constant pain to the left lateral aspect of the left lower extremity with twitching.  She reported problems since she fractured her ankle in 2001.  Plaintiff complained of a lot of pain over the left gastrocnemius muscle and lower back.  Dr. Falodun noted her history of degenerative joint disease.  X-rays of her back were consistent with degenerative joint disease, while x-rays of her ankle showed no acute fracture dislocation.  A heel spur was, however, noted.  A left lower extremity doppler study was interpreted by a radiologist as negative for a deep venous thrombosis.  Plaintiff was diagnosed with a heel spur, degenerative joint disease of the back, and muscle spasms.  She was discharged home with prescriptions for Motrin and Skelaxin.  Tr. 324-343.

On April 4, 2006, Plaintiff presented for treatment from the Physician's Assistant and medication refills.  Tr. 370, 356, 391.  She stated that the Wellbutrin had not been working well, she was eating more, and was short tempered.  Plaintiff wanted to try Effexor again.  Following a normal physical exam, the PA diagnosed her with anxiety/depression and bipolar disorder and prescribed a trial of Prozac.  Tr. 370, 365, 391.

On August 1, 2006, Plaintiff was treated by Harry Hindi, a Physician's Assistant, for shortness of breath, pericarditis, and panic attacks.  Tr. 217.  He diagnosed her with depression/anxiety and lower back pain.  Mr. Hindi prescribed Celebrex and Flexeril. Tr. 217.

On August 18, 2006, Plaintiff underwent a mental evaluation with Dr. David Zelbovitz. Tr. 212-214.  Plaintiff alleged disability due to arthritis, degenerative joint disease, chronic back pain, depression, and bipolar.  She stated that she had received no previous mental health services, inpatient or outpatient, and denied suicidal ideations or previous suicide attempts.

7

Mentally, Plaintiff complained of crying spells, irritability, difficulty sleeping, and frequent anxiety/panic attacks while in a vehicle or in public places.  Dr. Zelbovitz noted Plaintiff's mood was very depressed and that she was almost sobbing.  However, she established good eye contact, was very talkative, had no language deficits, established rapport within normal limits, was able to maintain attention throughout the evaluation, was alert on all spheres, put forth adequate effort, and exhibited adequate judgment and insight.

Plaintiff detailed a history of childhood physical abuse by both her mother and father. Both of her parents were reportedly alcoholics.  Education wise, she described herself as an average student, stating that she had gone to college and obtained a degree in nursing.  Plaintiff had last worked as a nurse at the Polk County Jail.  She quit due to severe back pain, and denied any work attempts since.  Currently, her prescription medications included Celebrex, Flexeril, and Prozac.  She also admitted to drinking alcohol daily to help her relax and smoking three to four packages of cigarettes per day.

Plaintiff indicated that she had adopted a child five years prior and spent her time at home, caring for her child.  She also reported watching television and cleaning her home.  Dr. Zelbovitz diagnosed Plaintiff with major depressive disorder, panic disorder without agoraphobia, nicotine dependence, and alcohol abuse.  He recommended that she undergo outpatient treatment and indicated that she was able to manage her own finances.  Tr. 212-214.

On August 24, 2006, Plaintiff was evaluated by Dr. Edwin Lamm. Tr. 223-225. Plaintiff claimed disability due to degenerative disk disease at the L4-5 level following a motor vehicle accident in 2001.  She stated that an MRI had shown annular bulging at the L4-5 and canal narrowing at the L3-4 level, resulting in numbness primarily in the lateral aspect of her left foot.

Plaintiff also reported a history of pericarditis with thoracic surgery in 1975. Dr. Lamm noted that she was obese with a normal gait and required no assistive devices for ambulation. She did have some difficulty getting on and off the exam table, mostly when moving from a supine to a sitting up position. However, an examination was normal, revealing a normal range of motion in all areas. Dr. Lamm found her history to be compatible with some nerve entrapment syndrome involving her left lower extremity and he diagnosed her with depression. He noted that she was unable to lift patients or perform many of the functions required as an LPN. It was, however, possible that she may be able to work at some sedentary activity. In addition, Dr. Lamm indicated that she needed better control of her depression and hypertension. He also noted Plaintiff's admission that she drank one pint[1] of whiskey per day to control her back pain and smoked three packages of cigarettes per day. Tr. 223-225.

On September 15, 2006, Plaintiff complained of arm and chest pain. Tr. 216. Dr. Zaw Min noted her history of pericarditis. Following an exam, he diagnosed her with atypical chest pain, gastroesophageal reflux disease, and anxiety/depression. He also referred her to a cardiologist. Tr. 216.

On December 5, 2006, Plaintiff was noted to be taking Ranitidine and Prozac. Tr. 249, 293. Her blood pressure had been elevated for the last two to three months, with a current blood pressure of 150/100 and a weight of 200 pounds. Therefore, she was prescribed Cetopril. Tr. 249.

It appears that Plaintiff continued to have problems with her blood pressure after her date last insured. Tr. 250, 288, 291-293, 407-415. Evidence also indicates that Plaintiff was

---

[1] We note that one pint of whiskey is the equivalent of 16 ounces or approximately 10 shots.

diagnosed with diabetes in 2007 and experienced difficulty keeping her blood sugar levels under control.  Tr. 288, 407-415.   Her depression also appears to have improved and she received injection into hips for the trochanteric bursitis.  Tr. 409.

**IV.**   **Discussion**:

At the onset, we note that Plaintiff has applied for DIB.  Her earnings record shows that she has acquired sufficient quarters of coverage to remain insured through December 31, 2006.  Tr. 96-108.  Therefore, Plaintiff must establish disability on or before that date in order to be entitled to a period of disability and DIB.  Tr. 50.  *Mueller v. Astrue*, 561 F.3d 837, 840 (8th Cir. 2009).

Plaintiff contends that the ALJ's credibility analysis does not comply with the legal standards, the ALJ improperly determined her RFC, and the ALJ incorrectly determined Plaintiff could perform jobs that exist in the national economy.  We will begin with an evaluation of the ALJ's credibility findings.  When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations.  *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents her from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in

10

evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

A review of the medical evidence does indicate that Plaintiff was suffering from degenerative disk/joint disease of the lumbar spine. However, it does not demonstrate compromise of a nerve root or of the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication as described in Listings 1.04A, B, and C. Physical exams have revealed only pain and limited range of motion. No gait

11

abnormalities have been noted and Plaintiff has not been prescribed any assistive devices that would indicate a problem with ambulation.

In March 2006, an examination revealed that Plaintiff's extremities were non-tender and that she exhibited a full range of motion in all areas with no muscle spasms. Tr. 324. Dr. Lamm's evaluation in August 2006 also found no neurological deficits and a normal range of motion in all areas. Tr. 224. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Thus, while we note that pain is something that must be considered, and we do not doubt that Plaintiff's condition is painful, we can find no evidence that her condition is severe enough to warrant surgery or the use of strong pain medications to treat her pain. Instead, physical findings have been minimal and Plaintiff has been prescribed conservative medications such as Flexeril, Vioxx, and Celebrex. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain).

While we do note that Plaintiff was diagnosed as being obese on several occasions, there is no indication in the record that her obesity eroded her physical abilities any more than we have already concluded. None of her treating doctors suggested her weight imposed any additional work-related limitations, and she did not testify that her weight imposed additional restrictions. *See Anderson v. Barnhart,* 344 F.3d 809, 814 (8th Cir. 2003).

X-rays from March 2006 did reveal a heel spur. Tr. 324-343. However, there is no further mention of the heel spur in the record. And, there are no medical records with specific clinical signs and diagnostic findings demonstrating a gross anatomical deformity and chronic joint pain resulting in an inability to ambulate effectively. In fact, the overwhelming medical

12

evidence documents a normal gait and no need for assistive devices. Accordingly, while we do find the condition to be severe and likely to result in some pain and discomfort, we can not say that this condition was disabling.

From a mental standpoint, we do note that Plaintiff has been diagnosed with depression and treated conservatively via medication for several years. She has, however, denied a history of mental health treatment, suicidal ideation, and suicide attempts. And, the record is devoid of any evidence to indicate that she has ever been treated by a mental health professional. The lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).

We also note that Plaintiff reported being able to follow spoken and written instructions "fine" and denied having any problems getting along with authority figures. She also denied having ever been fired due to problems getting along with others. Tr. 130-131, 143-144, 165-166, 173-174. Dr. Zelbovitz also indicated that Plaintiff was very talkative, had no language deficits, established rapport within normal limits, was able to maintain attention throughout the evaluation, was alert on all spheres, put forth adequate effort, and exhibited adequate judgment and insight. Tr. 212-214. Further, Dr. Carter concluded Plaintiff could understand, remember, and carry out routine instructions and procedures, make basic decisions, concentrate to complete things she started, and go out on her own (drive and shop although she reported occasional panic attacks while driving). She also found Plaintiff capable of coping with routine activities and adapting to change, performing activities of daily living, and to interacting appropriately with

13

others.  Tr. 260-277.  We find these abilities to be inconsistent with her allegations of disabling depression/anxiety.

Records from a physician's assistant indicate that Plaintiff also carried a diagnosis of bipolar disorder, but there is no indication in the record that Plaintiff was ever treated for this condition.   See 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources).  A mental assessment by Dr. Zelbovitz also fails to support this diagnosis.  After examining Plaintiff, he diagnosed her only with major depressive disorder and panic disorder without agoraphobia. Tr. 212-214.  Accordingly, we find that a mere diagnosis of bipolar disorder is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis.  *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

Plaintiff contends that the ALJ failed to properly consider her agoraphobia.  However, the record contains only one notation in which it states she was agoraphobic and this was noted in relation to Plaintiff having missed some appointments. Tr. 290.  The remainder of the records indicate she was diagnosed with panic disorder *without* agoraphobia.   Tr. 212-214, 226-239, 260-277.  And, after reviewing the record, it seems clear to the undersigned that Plaintiff's failure to attend appointments was just as likely a direct result of her panic disorder, as agoraphobia.  Plaintiff reported experiencing panic attacks while riding in a vehicle on freeways and major highways.  However, she also admitted to being able to both ride and drive on "back roads."  Further, she testified that medication decreased her symptoms of both depression and anxiety.  Accordingly, while we do find her panic disorder to have been severe, we do not find

14

sufficient evidence to establish a diagnosis and treatment pattern for agoraphobia.  We also fail to find sufficient evidence upon which to conclude Plaintiff's panic disorder was disabling.

Thirdly, Plaintiff alleges that the ALJ relied on her desire to return to work when concluding that her subjective complaints were not credible.  After reviewing the record, however, we do not find the ALJ to have placed significant reliance on Plaintiff's desire to return to work.  It is clear, however, in 2002, that Plaintiff underwent a pre-employment exam which indicated only a minimal residual back injury.  Tr. 250-251.  In 2006, Plaintiff also reported a desire to return to work as an LPN.  Tr. 371, 388.  This does distract, somewhat, from her contention of total disability beginning in April 2001.  Undergoing pre-employment screens is inconsistent with Plaintiff's contention that she could not work.

We note that the record makes clear that Plaintiff was also suffering from alcohol and tobacco abuse.  At one point, she even reported drinking one pint of whiskey per day to help alleviate her pain.  We find Plaintiff's excessive use of alcohol to weigh against her credibility in this case.  Further, given her excess use of both alcohol and cigarettes, it seems any argument Plaintiff might attempt to levy concerning a financial inability to obtain treatment or medication would be undermined by the fact that she consumed one pint of whiskey per day and smoked three packages of cigarettes per day.  *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (considering lack of evidence to suggest that Plaintiff chose to forgo smoking three packs of cigarettes a day to help finance pain medication).

Plaintiff's reported activities also undermine her claim for disability.  On an adult function report, Plaintiff reported the ability to take care of her five year old, clean house, and do chores.  Tr. 125, 138, 160.  She also stated that she could care for her personal hygiene

15

(although she experienced some back pain doing so), help care for family pets, prepare quick and simple meals, wash dishes (taking breaks whenever necessary), go outside a couple of times per week for approximately one hour, drive a car, shop for groceries in stores, pay bills, count change, handle a savings account, use a checkbook/money orders, watch television, read, talk on the phone, and interact with her daughter.  Tr. 125-129, 138-142, 160-167, 168-175. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).  Clearly, these activities do not support plaintiff's claim of disability.

Therefore, although it is clear that plaintiff suffers from some degree of impairment, she has not established that she is unable to engage in any and all gainful activity.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).  Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

16

We do note that Plaintiff's husband, Lloyd Pavey, testified that Plaintiff suffered from depression causing her to experience good and bad days. Tr. 34-37. On her bad days, she was very asocial and cried a lot. According to Mr. Pavey, when Plaintiff took her medication, her mood would improve. However, when she ran out of medication, she was difficult to live with. Tr. 34-37. The ALJ properly considered his testimony, but found it unpersuasive. This determination was within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

We next turn to the ALJ's determination that plaintiff had the RFC to perform a range of sedentary work. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, plaintiff's testimony regarding her daily activities, and the functional limitations set forth by the physicians. On September 6, 2006, Dr. Maryann Wharry completed a psychiatric

review technique form ("PRTF").  Tr. 226-239.  After reviewing Plaintiff's medical records, she concluded Plaintiff was suffering from a non-severe physical impairment, an affective disorder, an anxiety disorder, and a substance abuse addiction.  Specifically, she diagnosed Plaintiff with major depressive disorder, panic disorder, and nicotine and alcohol abuse.  Dr. Wharry found Plaintiff to have only mild limitations in all areas of functioning and found no evidence of episodes of decompensation.  Tr. 226-239.

On September 12, 2006, Dr. Sunita Patel completed a physical RFC assessment.  Tr. 240-247.  She, too, reviewed only Plaintiff's medical records.  Dr. Patel determined Plaintiff could lift twenty pounds occasionally and ten pounds frequently, as well as sit, stand, and walk about six hours during an eight-hour workday.  No other limitations were noted. Tr. 240-247.

On April 10, 2007, Dr. Glenn Bisby also concluded Plaintiff retained the RFC to lift twenty pounds occasionally and ten pounds frequently, as well as sit, stand, and walk about six hours during an eight-hour workday.  Tr. 252-259.

On April 17, 2007, Dr. Deborah Carter completed a PRTF and mental RFC assessment. Tr. 260-277.  After reviewing Plaintiff's medical records, she concluded Plaintiff was suffering from an affective disorder, anxiety disorder, and substance abuse disorder, specifically, major depressive disorder, panic disorder without agoraphobia, and alcohol abuse.  Dr. Carter concluded Plaintiff had mild restriction of activities of daily living and moderate limitations with regard to social functioning and maintaining concentration, persistence, and pace.  She also found moderate limitations concerning Plaintiff's ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without an unreasonable number and length of rest periods, interact

18

appropriately with the general public, get along without co-workers or peers without distracting them, and exhibit behavior extremes.  Dr. Carter indicated that Plaintiff could understand, remember, and carry out routine instructions and procedures, make basic decisions, concentrate to complete things she started, and go out on her own (drive and shop although she reported occasional panic attacks while driving).  She also found Plaintiff capable of coping with routine activities and adapting to change, but concluded she had a decreased tolerance for stress. Plaintiff retained the capacity to function mentally and socially, to perform activities of daily living, and to interact appropriately with others.  Tr. 260-277.

Plaintiff contends that the ALJ's RFC assessment was improper because the evidence clearly indicates that she was not capable of performing sedentary work.  More specifically, she cites to two medical records to support her allegations that her back and leg pain caused her significant difficulty in walking, lifting, and performing other work-related activities.  Tr. 366, 369.  A review of these records, however, does not provide objective support for Plaintiff's contention.  Aside from Plaintiff's own self serving comments regarding her inability to return to work because she would not lift, pull, or tug (activities required of her in the nursing field), we can find no objective findings indicating Plaintiff was unable to perform sedentary work. Instead, the records merely indicate that Plaintiff had a decreased range of motion in her back with pain.   And, we note that Vioxx and Flexeril were the conservative, non-narcotic medications prescribed.  Tr. 366, 369.  *See Haynes*, 26 F.3d at 814 (lack of strong pain medication was inconsistent with disabling pain); *see also Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

19

Likewise, while we do believe that Plaintiff's heel spur resulted in some pain and discomfort, we can not say that it rendered her unable to stand and walk in any capacity. As previously noted, the record does not indicate that Plaintiff's heel spur resulted in problems with gait or ambulation. And, Plaintiff was noted not to require the use of assistive devices. Accordingly, we believe the evidence is sufficient to support a finding that Plaintiff could perform the range of sedentary work outlined by the ALJ.

Plaintiff also seeks reversal on the ground that the ALJ failed to properly consider her mental limitations in his RFC assessment. She relies on Dr. Carters's mental RFC finding moderate limitations in several areas of functioning. We note, however, that Dr. Carter's assessment was a non-examining, consultative assessment. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). The medical evidence of record reveals that Plaintiff had no history of mental health treatment, inpatient or outpatient. In fact, she even denied a history of suicidal ideations and/or attempts. Instead, Plaintiff opted to receive only medication from her general doctor.

Although she stated that she did not like to be around others, Plaintiff reported no problems getting along with authority figures and denied ever having been fired due to problems getting along with others. Tr. 130-131, 143-144, 165-166, 173-174. While she did complain of panic attacks while driving on freeways and interstates, she reported the ability to drive on "back roads" without difficulty. She also admitted that her medications helped both her anxiety and her depression. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

20

Accordingly, while we do believe her mental limitations limited her to unskilled work where the interpersonal contact was incidental to the work performed and involved only low-stress work requiring only occasional decision making and changes in workplace environments, we do not believe that it resulted in any greater limitations or prevented her from performing the range of sedentary work identified by the ALJ.

We also find that substantial evidence supports the ALJ's finding that plaintiff can perform work that exists in significant numbers in the national economy. The vocational expert testified that a person with Plaintiff's RFC could perform work as a surveillance system monitor, inspector and sorter, and assembler. Tr. 40-41. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

Plaintiff contends that the ALJ's conclusion that she could return to work that exists in the national economy is misplaced because he failed to include all of her limitations in the hypothetical posed to the vocational expert. We note, however, that the ALJ is only required to include those limitations in his hypothetical which he finds to be credible. *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). The hypothetical question posed by the ALJ in this case incorporated each of the physical and mental impairments that the ALJ found to be credible, and excluded those impairments that were discredited or that were not supported by the evidence presented. Accordingly, we find no error.

**V.   Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days**

from receipt of our report and recommendation in which to file written objections pursuant

to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right

to appeal questions of fact.  The parties are reminded that objections must be both timely and

specific to trigger de novo review by the district court.

DATED this 14th day of January 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

22